### SUNDERLAND.

Where the selectmen, after counting the ballots given in at an election for representative, and declaring that an election had been effected, subsequently found among the used and broken envelopes two additional ballots for representative, and, thereupon counselled together, added the votes so found to the count, and declared that no election had taken place; it was held by the house, that such ballots ought not to have been counted.

THE election of Timothy Graves, returned a member from the town of Sunderland, was controverted by Horace Lyman

[1] 74 J. H. 511.

and others, for reasons which are stated in the report of the committee on elections, which contained a statement of the evidence, in full, and concluded as follows:—

"From the evidence in the case, it appears that a declaration was made of the votes for representative, by which it appeared that the whole number was 186; necessary to a choice, 94; Timothy Graves had 94, and he was declared duly elected.

That immediately afterwards two more votes for representative were found in envelopes, which envelopes had not been taken out of the presence of the selectmen. These two votes were for Wm. W. Russell. Had these votes been discovered and counted before the first declaration, the vote would have stood as follows: whole number, 188; necessary for a choice, 95; and no one had that number.

The selectmen considered that these two votes were legally cast, and ought to be counted, and did accordingly count them, and made a new declaration that there was no choice of representative, and thereupon the meeting voted not to send a representative, and adjourned. Four days afterwards, under a demand from Mr. Graves for a certificate, the selectmen consulted counsel, and were advised that it was their safest way to give the certificate, as they might be liable in case of a refusal, and that if there was any error it could be corrected here. In accordance with this advice, they granted the certificate under which Mr. Graves holds his seat.

The committee are of opinion, that the selectmen rightfully counted the two votes, found in the envelopes after the first declaration, and that there was no choice of representative in Sunderland on the second Monday of November last.

The committee further declare it as their firm conviction, that the certificate subsequently given to Mr. Graves, under an apprehension of liability in case of refusal, was unwarranted either by the laws of the commonwealth, or by the facts proved.

The committee, therefore, feel compelled to report:—

That Timothy Graves is not entitled to a seat as a member of this house."

Three members of the committee, (Messrs. *Schouler*, *Jones*, and *Bond*,) dissenting from the above report, presented their views as follows:—

" The facts of the case, as shown by the evidence, are these : At the election held in the town of Sunderland, on the 10th of November last, Timothy Graves was declared elected a representative in the general court, and it also appeared that subsequently a voter of the town, having received from one of the selectmen a number of the envelopes which had been used in the election, found, as he swears, a vote in one of them for William W. Russell, which vote he showed to one of the selectmen. After this fact was known, another of the selectmen found, in overhauling the broken envelopes, another vote for the same William W. Russell. They then held a consultation and agreed to make another declaration, which they did, namely : That Mr. Graves was not elected. After doing so, the meeting, there being only seven persons present, voted first not to send, and then to dissolve the meeting. It further appears that the selectmen took counsel of Judge Forbes and Charles P. Huntington, Esq., of Northampton, gentlemen of distinguished legal ability, as to the course for them to pursue in the premises. Mr. Graves having asked them for his certificate, they were advised to give Mr. Graves his certificate. They gave it to him, and Mr. Graves accordingly took his seat in this house.

These are the facts of the case. The majority of the committee have come to the conclusion, that Mr. Graves is not entitled to his seat, and that the two votes subsequently found in the broken envelopes, after the declaration had been made and Mr. Graves declared elected, ought to have been counted, and Mr. Graves refused his certificate. They say that the selectmen were bound to count those two votes, and declare that no election had been made. We take issue with them upon this point.

The undersigned ask the serious consideration of the house to this case, and to the decision of the majority. It is of the very first importance. There is a principle involved in it of

the greatest magnitude; a principle which involves in a vital and permanent degree the security and the purity of the elective franchise; and we cannot bring ourselves to believe, that if the house will give the subject a calm and unbiassed consideration, they will sustain the position assumed by the majority.

We shall not weary the attention of the members, by detailing to them the collateral questions involved in the evidence. They are unimportant in themselves, but when considered in relation to their bearing upon the main issue, serve to elucidate the great and important point involved in the case, which we hold to be this: That whenever a doubt exists as to the truthfulness or legality of a vote, that doubt shall be given on the side of truth and legality; that if there be any practice, we care not what it is, which if carried into our elections can be made the means of gross fraud and deception, that practice is to be avoided.

It has been the boast of our state, that the legislature of Massachusetts, from time immemorial, has guarded by wise statutes the purity of the ballot-box, so that a true expression of the wishes of the voters of the state might always be attained. For this reason it is, that we have laws which prescribe certain fixed duties to the selectmen and presiding officers at town-meetings. The selectmen, before entering upon the discharge of their responsible duties, are required to make oath, that they will fairly and impartially perform those high and responsible duties. The recording officer is required to be sworn to the proper discharge of his duty. The votes are required to be counted, sorted, declared, and sealed up in open town-meeting. The list of votes is required to be made out and the list and check are required to be used in these elections, and no man is permitted to put his vote into the ballot-box, until his name is first found upon the check list and checked by the presiding officer. Unless each and all of these requisitions are complied with, the election is not according to law. Severe penalties are prescribed for fraudulent voting.

By wise and salutary checks, the laws of Massachusetts keep

pure the fountain-head of political power, and they have been to our commonwealth a savor of right unto liberty. But let us once adopt the principle upheld in the decision come to by the majority of the committee in this case, and we open wide the sluice-gates for all sorts of abominations, cheating, and corruption in our elections, which will last as long as we have upon our statute books the law of the last session, known as the secret ballot law, in the practical exercise of which this case, and many others, have been brought before this legislature for examination.

It is proposed by the majority to unseat Mr. Graves, because, after the envelopes were opened, counted, the declaration made, and he declared elected, and after many of the broken envelopes had been scattered upon the floor, and some of them taken away, two votes were found for another person, one by a selectman and another by a citizen of the town, not an officer, nor sworn to discharge any duty. We ask, in all candor, who is there that knows anything of these two votes? who can, of his own knowledge, tell whether they were true or fraudulent votes. We of course impeach the character of no man when we put this question, but we put the question, and we would press it home to the mind of each member of this house. We repeat it, and we would like to have an affirmative answer given, if one can be given. Who can tell whether these two votes were put into the envelopes fairly or fraudulently? All we know is, that they were not found by the selectmen when they first opened the envelopes; they were found afterwards, and after a portion of them had passed from their hands. But how they came there, but one power, short of omnipotence, can answer, and that is the voter himself. The selectmen could not tell. The house cannot tell. It is a secret past our finding out. The majority of the committee, by their decision in this case, say, in effect, that they believe the votes were properly there, and that they should have been counted. But the majority do not know the fact, and cannot, from the very nature of the question, know it. It is a sealed book to all the world.

But the principle involved is the important point. It is of vastly more importance to the people of this commonwealth, than whether Mr. Graves shall be suffered to retain his seat or shall be sent home. So long as the secret ballot law remains a living, active agent in our elections, the principle involved in this case will never cease to be felt. Cheating would become, as Shakspeare says, 'as easy as lying' in every election, if we establish as a rule the principle involved in the report of the majority. Unprincipled men could and would use, and they have used, this secret envelope system for double voting. Who can tell that it was not so used in Sunderland? We do not say that it was. We cannot tell. Who can tell that from each of the envelopes in which these votes were found, a ballot containing a full vote for governor, lieutenant-governor, senators and representatives to the legislature, on one piece of paper, had not previously been taken, and when taken the broken envelopes had been thrown aside by the selectmen, they of course supposing that there was nothing else in them; but subsequently, when it was impossible to identify the envelopes, they had been re-examined, and other votes for representatives were found therein. Who can answer this question? Who is so blind as not to see, that if we establish the principle, that the envelopes, after they have once passed from the hands of the selectmen,—who, it is presumed, have carefully examined the inside,—shall be examined again, and if a slip of paper is found therein, bearing the name of a candidate for the legislature, that it is to be counted as a good vote, although they cannot tell whether or not they had taken already one vote for representative from that same identical envelope; who, we say, is there so blind as not to see, that it is adopting a rule of action, which will open wide the door to fraud and corruption; and if we adopt the report of the majority, and unseat Mr. Graves, we adopt that rule,—we make it a part of our laws concerning elections.

But it may be said, and doubtless will be, that this will not be practised. In answer, we say that it has been practised. There is a member holding a seat in this house, who was de-

feated on the first Monday of November by this very means. Fifteen more votes were cast in his town for representatives than there were envelopes in the box, and of course these fifteen must have been put in fraudulently. It is offering an immunity to fraud. Any man can vote double in this way, and forever escape detection.

For these, and other reasons which we might name, the undersigned cannot concur with the report of the majority. In presenting our views to the house, we have said nothing about the character of the testimony in this particular case. It will be found correctly reported in the report of the majority. We have preferred to consider the question as one involving a vital principle, so far as the purity of our elections is concerned. It is a case which has arisen out of the secret ballot law of the last session. The committee have had no precedents in the books to guide them in their decision. This house is to fix a precedent by their vote upon this question, and from that fact the case receives a great share of its importance.

The undersigned ask that it may be decided in such a manner as shall tend to perpetuate the purity of the ballot in this commonwealth; and, in conclusion, they report that the petitioners have failed to make out a case, and that Timothy Graves is entitled to his seat, and that the petitioners have leave to withdraw their petition."

The report was amended, agreeably to the suggestion of the minority, by striking out the conclusion thereof, and inserting, instead of the same, " That the petitioners have leave to withdraw ;" and, as amended, was agreed to.[1]

[1] 74 J. H. 511, 512.